# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **v.** | : | **No. 23-CV-** |
| **$161,354.08 in U.S. Currency** | : | |
| **Defendant.** | : | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America, plaintiff herein, by and through its attorneys, Jacqueline C. Romero, United States Attorney, and Assistant United States Attorney Sarah L. Grieb, Chief, Asset Recovery and Financial Litigation, and J. Andrew Jenemann, Assistant United States Attorney, in and for the Eastern District of Pennsylvania, in accordance with Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, for its complaint alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States of America approximately $161,354.08 in U.S. Currency ("Defendant Currency"), currently in the custody of the United States Secret Service, previously held by JP Morgan Chase Bank, in account number 895793286, in the name of FJZ Export and In Port, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

2.      Title 18, United States Code, Section 981(a)(1)(C) provides for the forfeiture of

any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense. Specified unlawful activity is defined, at 18 U.S.C. §§ 1956(c)(7) and 1961, to include wire fraud, in violation of 18 U.S.C. § 1343.

3.      Pursuant to 18 U.S.C. § 984, "[i]n any forfeiture action *in rem* in which the subject property is . . . funds deposited into an account in a financial institution . . . it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for forfeiture." Rather, "any identical property found in the same…account…shall be subject to forfeiture." Section 984 applies when the action to forfeit the property is commenced within one year from the date of the offense.

## JURISDICTION AND VENUE

4.      This Court has subject matter and *in rem* jurisdiction over the matter under 28 U.S.C. §§ 1345 (action commenced by the United States) and 1355(a) and (b) (action for forfeiture), respectively.

5.      Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1) and 28 U.S.C. § 1395(a) and (c), because a civil proceeding for the forfeiture of property may be prosecuted in the district in which any of the acts giving rise to forfeiture occurred and/or in the district in which the property is brought.

6.      Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**THE DEFENDANT IN REM**

7.      The Defendant Currency is approximately one hundred sixty-one thousand, three hundred fifty-four dollars and eight cents ($161,354.08), currently held by the United States Secret Service, previously held by JP Morgan Chase Bank, in account number 895793286, in the name of FJZ Export and In Port ("Subject Account").

**BASIS FOR FORFEITURE**

8.      The Defendant Currency is subject to forfeiture pursuant to 18 U.S.C § 981(a)(1)(C) because the funds constitute or are derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343, which is a "specified unlawful activity" within the meaning of 18 U.S.C. §§ 1956(c)(7) and 1961(1). Pursuant to 18 U.S.C. § 984, because the funds were deposited into an account in a financial institution and this action to forfeit the funds is being commenced within one year from the date of the offense, it is not necessary for the Government to identify the specific property involved in the offense and identical funds in the account are subject to forfeiture.

**FACTS**

**Individual One: K.R.**

9.      K.R. is an approximately 76-year-old widow who lives in Philadelphia.

10.      During in or about June 2021, K.R. received a message on the Line app from X,Y., whose profile picture depicted a young male of Asian descent with tattoos on both of his forearms. K.R. did not know X.Y., but responded to the message because she was lonely.

11.     After conversing for about six months, X.Y. introduced K.R. to the idea of investing in cryptocurrencies. Under X.Y.'s instruction, K.R. opened a Crypto.com account and purchased Tether (USDT).

12.     X.Y. then convinced K.R. that in order to maximize her returns, she should invest in an exchange called "ANT Coin". K.R. installed the ANT Coin app on her iPhone. X.Y. instructed K.R. how to initiate an external wallet transfer from her Crypto.com account to her ANT Coin account.

13.     During in or about 2022, K.R. transferred approximately $267,000 worth of USDT to the wallet that she believed to be linked to ANT Coin. After her USDT landed in her ANT Coin account, K.R. saw massive gains in her investment.

14.     K.R. attempted to withdraw her earnings form her ANT Coin account, but was unable. ANT Coin customer service stated that she needed to put down a 20% deposit due to her account being under suspicion of money laundering. ANT Coin customer service provided wiring instructions and the amount that K.R. was required to wire.

15.     After following these instructions, K.R. never was able to withdraw her funds. In total, K.R. attempted to withdraw her investment in ANT Coin approximately 15 times. Each time, ANT Coin customer service provided different wiring instructions. These wiring instructions were often to beneficiary banks located in Hong Kong, Australia, or the United Kingdom. On three occasions, she was instructed to wire money to domestic bank accounts, one of them being the Subject Account.

16.     On or about October 27, 2022, K.R. wired $120,000 to the Subject Account from K.R.'s Citizen's Bank account number xxx4408.

4

17.     United States Secret Service Special Agent McLaughlin conducted open-source research on the ANT Coin exchange and could not verify that ANT Coin is a legitimate cryptocurrency exchange or trading platform.

18.      X.Y. further admitted to K.R. that this was a scam, and he is not who he said he was.

**JP Morgan Chase Bank, N.A., Account Number 895793286 ("Subject Account")**

19.     The account holder on J.P. Morgan Chase Bank account number 895793286 (the "Subject Account") is an individual identified as D.L.S., and the Subject Account was opened on August 24, 2022.

20.     Between September 20, 2022, and November 9, 2022, the Subject Account received approximately 37 wire deposits from unique individuals and entities totaling approximately $1,654,152.89. During the same timeframe, approximately $1,394,848.01 was depleted via wire transfers to banks located in Singapore, Hongkong, and India.

21.     JP Morgan Chase Bank statements show that on or about October 27, 2022, the Subject Account was the beneficiary of a $120,000 wire from K.R. This wire deposit was depleted on or about October 31, 2022, when approximately $340,000 was wired from the Subject Account to a China Construction Bank account titled to O Diamonds Trading Limited.

22.     In or about November 2022, JP Morgan Chase restricted the Subject Account due to multiple scam wires entering the account and further being wired to China.

23.     On or about November 30, 2022, after JP Morgan Chase restricted the Subject Account, the balance in the Subject Account was $161,354.08.

24.     Prior to the ending balance of $161,354.08 in the Subject Account on November 30, 2022, the last deposits into and withdrawals from the Subject Account are attributed to the

following individuals who conducted wire transfers from the following accounts into the Subject Account between on or about November 4, 2022, and on or about November 9, 2022:

| Date | Name | Institution Deposit From | Account # Deposit From | Amount Deposited | Amount Withdrawn |
|------|------|--------------------------|------------------------|------------------|------------------|
| 11/4/2022 | B.S. | Bank of America | xxx6605 | $30,000 | |
| 11/4/2022 | J.M. | Midflorida Credit Union | xxx7244 | $10,000 | |
| 11/7/2022 | M.Z. and A.Z. | JPMC | xxx2667 | $28,530 | |
| 11/7/2022 | T.K. | Pilot Grove Savings Bank | xx8339 | $20,432.20 | |
| 11/7/2022 | M.D. | JPMC | xxx2299 | $10,000 | |
| 11/8/2022 | The M.A. Living Trust | Wells Fargo | xxx7302 | $97,000 | |
| 11/8/2022 | F. D. | JPMC | xxx2200 | $50,000 | |
| 11/8/2022 | J.C. | Santander Bank | xxx5521 | $33,300 | |
| 11/9/2022 | R.W. | Bank of America | xxx8923 | $10,000 | |
| 11/21/22 | | | | | $97,000 |

## Individual Two: B.S.

25.     B.S. wired $30,000 to the Subject Account on or about November 4, 2022, from Bank of America account number xxx6605.

26.     In or about October or November of 2022, a few young Asian women messaged B.S. on Telegram, claiming to be very successful in business and involved in many markets, to

include cryptocurrency. These women claimed to have insider information on cryptocurrency markets that would allow them to determine if coins will go up or down in price. The women directed B.S. to a website that was a trading platform. The website is coinworldind.com.

27.     B.S. opened an account in coinworldind.com. B.S. began trading on the platform at the direction of the scammers and described a trading strategy that involved betting on whether coins will increase or decrease in price. These bets would last only 30 seconds to 1 minute. At one point, his account balance reached $155,000 from successful bets.

28.     B.S. attempted to withdraw the money, but his account got locked. The customer service chat function on the website claimed that he typed something wrong in the process of withdrawing his money. B.S. was directed that, to unlock his account, he needed to wire additional funds to another account.

29.     B.S. wired an additional $30,000. Despite the wire, his account was still locked, and they requested more money. This is when B.S. became suspicious that the website was a scam.

**<u>Individual Three: J.M.</u>**

30.     J.M. wired $10,000 to the Subject Account on or about November 4, 2022, from Midflorida Credit Union account number xxx7244.

31.     J.M. was added into a group chat with hundreds of people, advertising an opportunity to invest into a foreign exchange. J.M. believed it was legitimate because he randomly picked a few people in the group chat to message separately and they claimed it was legitimate.

32.     In total, J.M. wired approximately $150,000 to multiple domestic banks due to the investment scam.

**Individual Four: M.Z.**

33.     M.Z. wired $28,530 to the Subject Account on or about November 7, 2022, from JP Morgan Chase account number xxx2667.

34.     M.Z. met a friend online that told him about the Bitget app.

35.     M.Z. wired funds to multiple different accounts.

36.     M.Z. thought that the wire was for a legitimate investment.

**Individual Five: T.K.**

37.     T.K. wired $20,432.20 to the Subject Account on or about November 7, 2022, from Pilot Grove Savings Bank account number xxx8339.

38.     T.K.'s wife passed away in August 2022, and about a month or two after her passing, he received messages on Facebook from A.H. A.H. eventually requested T.K. to message her on Telegram.

39.     A.H. told T.K. about a new cryptocurrency coin coming out and that he could invest in it through the Bitget app. A.H. instructed T.K. how to install the app on his phone.

40.     A.H. convinced T.K. to invest more money as the new coin was going up in value. At one point his investment shown in the Bitget app was worth $1.6 million.

41.     When T.K. attempted to withdraw the money, he was unable, and customer service requested that he wire more money to cover taxes for his withdrawal.

42.     T.K. relayed this information to A.H., and she tried to convince him to rob a bank or sell his vintage cars to come up with the money. This is when T.K. realized that it was a scam.

43.     The total amount that T.K. lost due to the scheme was approximately $325,000.

44.     Sometimes T.K. and A.H. communicated through Facetime, however, the camera would not be pointed at A.H.'s face.  One time, the camera was facing A.H. A.H. quickly turned

the camera around, but it was enough time for T.K. to see that it was not the person in the pictures to whom he was talking.

45.     A.H. threatened to commit suicide by drinking a Chinese potion because she was unable to withdraw her own investment and demanded that T.K. come up with this money. T.K. called the police to an address in California that A.H. provided to stop her from committing suicide.

46.     The police responded to the address and found that the residence was occupied by an elderly couple. The police then reached out to T.K. and informed him that he was not talking to a real person.

47.     T.K. continued to receive calls from A.H.'s family members informing him that A.H. was in the hospital from attempting to commit suicide, and T.K. received a picture of a woman lying in a hospital bed.

**Individual Six: M.D.**

48.     M.D. wired $10,000 to the Subject Account on or about November 7, 2022, from JP Morgan Chase account number xxx2299.

49.     M.D. met a woman on WhatsApp who introduced him to investing on a website called HKEX Exchange. HKEX Exchange was a website to trade foreign currency on the foreign exchange.

50.     M.D. initially sent approximately $20,000 via Zelle for an initial investment. He was able to take out small amounts of his returns at first, but ultimately he was informed that he had to pay taxes on his returns to withdraw anything.

51.     M.D. was then instructed to send $10,000 to the Subject Account.

52.     After M.D. wired the $10,000, he was still unable to withdraw his investment. M.D. realized that it was a scam.

**Individual Seven: T.A. (The M.A. Living Trust)**

53.     T.A**.** wired $97,000 to the Subject Account on or about November 8, 2022, from Wells Fargo account number xxx7302.

54.     T.A. was browsing on her laptop when she clicked on a link and what seemed to be a legitimate Windows pop up froze her computer. The pop up listed a phone number that T.A. called.

55.     T.A. spoke with a person whom she believed to be a representative at Microsoft. The individual stated that her computer and bank accounts were all compromised, that an insider at Wells Fargo was the perpetrator, and that she needed to move her money into a secure account. The individual instructed T.A. to wire money to the Subject Account.

56.     T.A. followed the instructions and wired $97,000 from Wells Fargo account number xxx7302.

57.     T.A. was able to successfully recover the $97,000 on or about November 21, 2022, due to a typo in the wiring instructions.

**Individual Eight: F.D.**

58.     F.D. wired $50,000 to the Subject Account on or about November 8, 2022, from JP Morgan Chase Bank account number xxx2200.

59.     F.D. had received an email from Amazon advising her that a fraudulent charge had occurred on her account and to contact the number provided in the email.

60.     F.D. contacted the number on the email and spoke with a Bank of America person named "Tim" who advised her that she needed to transfer money into accounts he specified to keep her money safe.

61.     F.D. began doing what was asked from "Tim" and transferred money into multiple accounts.

62.     F.D. eventually determined that it was fraudulent and went to the Los Angeles Police Department to make a police report regarding the fraudulent wire transfers.

**Individual Nine: J.C.**

63.     J.C. wired $33,300 to the Subject Account on or about November 8, 2022, from Santander Bank account number xxx5521.

**Individual Ten: R.W.**

64.     R.W. wired $10,000 to the Subject Account on or about November 9, 2022, from Bank of America account number xxx8923.

65.     R.W. wired the funds to the Subject Account after a young woman whom he met online convinced him to invest in some type of business loan and/or venture.

**CLAIM FOR FORFEITURE**

66.     By reasons of the foregoing, there is reason to believe that the Defendant Currency constitutes or is derived from proceeds traceable to wire fraud, and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

WHEREFORE, the plaintiff, United States of America, requests:

1.    The Defendant Currency be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

2.    The Court, for the reasons set forth herein, adjudge and decree that the Defendant Currency be forfeited to the United States of America and disposed of in accordance with existing laws, together with costs, and for such other relief as this Court deems proper and just.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


_____
SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery & Financial Litigation Unit


_____
J. ANDREW JENEMANN
Assistant United States Attorney

Date: September 19, 2023.

12

## <u>VERIFICATION</u>

I, Adam McLaughlin, being of legal age, verifies and, pursuant to Title 28, United States Code, Section 1746(2), declares and states as follows:

1.      I am a Special Agent with the United States Secret Service, Philadelphia Division, and I am assigned to the investigation in this case.

2.      I have reviewed the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge.

3.      The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on September 19, 2023.

X _____

Adam McLaughlin
Special Agent
United States Secret Service